JOHN W. EASTERBROOK, SBN 173890
DAVID V. DUPERRAULT, SBN 99637
Silicon Valley Law Group
25 Metro Drive, Suite 600
San Jose, CA 95110
Telephone: (408) 573-5700
Facsimile: (408) 573-5701

Attorneys for Secured Creditor Bridge Bank, N.A.

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>VARNER BUSINESS PARK, LLC<br><br>Debtor. | **Case No. 2:10-bk-18488-BB**<br><br>**(Old Case No. 6:09-bk-25784-BB)**<br><br>OBJECTION TO DEBTOR'S ORIGINAL DISCLOSURE STATEMENT<br><br>Date:    April 1, 2010<br>Time:   10:00 a.m.<br>Address: 255 E. Temple St., Room 1475<br>           Los Angeles, CA 90012<br>Judge:   Hon. Sheri Bluebond |

Bridge Bank, N.A. ("Lender" or "Bridge Bank") hereby respectfully objects (the "Objection") to the Debtor's Original Disclosure Statement Describing Debtor's Original Chapter 11 Plan ("Disclosure Statement") proposed by Varner Business Park, LLC ("Debtor" or "Varner") filed in the above entitled bankruptcy case.

**INTRODUCTION**

Debtor filed its voluntary Petition under Chapter 11 of the Bankruptcy Code on July 12, 2009, in order to prevent a trustee's sale under the Lender's Deed of Trust, which sale date was set for the following day. Debtor is a real estate developer and its only asset is 10 subdivided industrial/commercial lots located in Thousand Palms, California. The court has determined that the Debtor is a "Single Asset Real Estate" debtor.

---

OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT

1

10304259

The Disclosure Statement lacks adequate information as required by 11 U.S.C. §1125. The Plan also appears to be unconfirmable on its face. For these reasons, the court should not approve the Disclosure Statement.

## BACKGROUND

Bridge Bank is a secured creditor in the above entitled bankruptcy case and is so listed, without dispute, in Debtor's schedules filed in this case. Lender has filed a Proof of Claim in this case in the amount of $1,491,178 which is approximately $33,000 more than the amount set forth in Debtor's schedules, which was $1,458,172. The Debtor now asserts that the status of the Lender's secured claim is disputed pursuant to an adversary proceeding filed in December, 2009. Bridge Bank's claim is separately classified as Class No. 1 and acknowledged as an impaired claim.

The Debtor filed its proposed Plan on February 15, 2010, pursuant an order of the Court confirming the Debtor is subject to the provisions of 11 U.S.C. §361(c), as such section applies to single asset real estate cases.

## OBJECTIONS TO DISCLOSURE STATEMENT

**A.    Legal Standard Under §1125: Adequate Information.**

The Bankruptcy Code at §1125(b), provides as follows:
> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing by the court as containing adequate information.

The Bankruptcy Code at §1125(a)(1) further defines "adequate information" as:
> … information of a kind, and in sufficient detail, as far as reasonably practicable in light of the nature in history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonably investor typical of holders of claims or interests in the relevant class to make an informed judgment about the plan…

---

OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT

2

10304259

One of the fundamental policies underlying the Chapter 11 reorganization process is disclosure. The disclosure statement was intended to be a primary source of information which creditors and shareholders could rely upon in making an informed judgment about the plan of the organization. A disclosure statement should contain all pertinent information bearing on the success or failure of the proposals in the plan. *In re Cardinal Congregate I*, 121 BR 760, 765 (Bankr. S.D. Ohio 1990), citing *In re Stanley Hotel, Inc.,* 13 BR 926, 929 (Bankr. D. Colo. 1981).

**B.     Minimally Required Information.**

The determination of what constitutes "adequate information" is made on a case by case basis. *Matter of Texas Extrusion Corp.,* 844 F2nd 1142, 1157 (5th Cir. 1988), *Cert. Denied*, 109 S. Ct. 311 (1988). Courts often use a multi factored and exhaustive list of criteria as a guide for evaluating the adequacy of the information contained in a disclosure statement. However, small or medium sized cases may be more amenable to a simpler and shorter list of relevant disclosure factors. It has been state that, at a minimum, the disclosure statement should contain:

a.    A description of the business;

b.    Financial information;

c.    Description of the plan;

d.    Facts respecting execution of the plan;

e.    A liquidation analysis;

f.    Identification of management and its compensation;

g.    Transactions with insiders;

h.    Tax consequences.

*In re Malek*, 35 BR 443 (Bankr. E.D. Mich., 1983). Also see, *King, et al.*, *15 Collier on Bankruptcy* 1125-12 (¶1125.02 [2] 2006). These points will be referred to as "Guide Points" in the following section of this Objection.

A disclosure statement should contain all material information relating to the risks posed to creditors and equity interest holders under the proposed plan of reorganization. *In re Cardinal, supra,* 121 BR at 765.

---

OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT

3

10304259

### C. **The Debtor's Disclosure Statement Lacks Adequate Information.**

The Disclosure Statement lacks adequate information under the standards set out above as follows:

1. <u>The amount to be obtained from sales of the lots is not disclosed.</u>  Guide point b. under Section B above requires that the Debtor describe financial information about the Plan.  In the present case, the Debtor has disclosed no information concerning the amounts the bankruptcy estate will obtain from selling the lots that are the subject of the Plan.

2. <u>No schedule or deadlines are provided for selling lots, funding the Plan, or distributing funds to creditors.</u>  The Disclosure Statement notes that the Plan will be funded from the sale of Debtor's lots over a 5 year term but provides no schedule or milestones for any sales or payments to creditors under the Plan. (See, Disclosure Statement ("D. S."), pg 13, ln. 21 – pg 14, ln. 3 (13:1-14:3).)  Without any required milestones or payments indicated, creditors are unable to make any determination about the value of payments or the risks inherent in the Plan.  As written, the Debtor could transact no sales and make no payments to creditors for a 5 year period.  The Disclosure Statement references certain exhibits, including an <u>Exhibit B</u>, which is supposed to include a financial projection, but no exhibits are included.  (D.S., 3:25-26.)  Accordingly, the Disclosure Statement contains no adequate description of the reorganized debtor's post confirmation operations.  The Disclosure Statement contains no information as to whether the sales of the lots, required to fund the Plan, are to be all cash transactions or involve more complicated or alternative financing.  Guide Points b, c and d under Section B above require such information to be provided to creditors.  The Disclosure Statement is very deficient in this regard.[1]

---

[1] The Bankruptcy Code entitles a creditor in the shoes of Lender in this case to obtain relief from stay unless the Debtor "has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time[.]," or commences making monthly payments.  11 U.S.C. §362(d)(3)(A), (B).  Lender believes the existing Plan, as described in the Disclosure Statement, on its face fails to demonstrate that such Plan has a reasonable possibility of being confirmed. Accordingly, Lender is entitled to relief from the automatic stay.  Although Lender has not at this time made a motion with respect to this, the deficiencies discussed herein lead to such a conclusion.

   3. <u>Inadequate Information Is Provided Concerning Debtor's Plans to Market The Lots</u>. Guide point d above requires the Debtor to present facts respecting execution of the Plan and, in the present case, this would include the facts concerning the marketing of the subject property, which is the sole source of funding for the Plan. Other than a statement that, "the Debtor will aggressively market the subject property and continued to solicit offers for the purchase of the remaining 10 individual lots," the Plan is devoid of any discussion of the marketing of the property. The is particularly important as <u>no sales</u> of lots have occurred for approximately 2 years notwithstanding the fact lots have been listed continuously during that period of time. (D.S., 17:24-26.)

   4. <u>The Disclosure Statement provides inadequate information about how Lender's claim is to be treated and paid once it is held to be a secured claim.</u> Guide points b. and d. under Section B above require that the Debtor disclose how sales of the lots will generate distributions to creditors. The Disclosure Statement states that lots will be sold over a 5 year period. As the Debtor knows and the court perhaps recalls, the Lender's deed of trust has a schedule of release prices (or, more precisely, a formula for release prices) contained therein. The Disclosure Statement states that release prices with respect to the Lender's deed of trust should be determined by the Court subject to interest adjustments. No specific information is given. The Lender, however, is entitled to know the extent to which its claim is impaired by the Debtor's Plan and, accordingly, what the Debtor will be proposing with respect to release prices. The Disclosure Statement further provides that, in the event the Lender's secured claim is valid, the claim will be reduced to the beginning principal balance and outstanding interest "not to include default interest or other charges" without specifying rates, amounts, or what any of these items entail.

   5. <u>The Disclosure Statement fails to disclose information about an initial lot sale, proposed in the Plan, including the proceeds generated, how they will be used, or how the Lender's lien on the subject property will be protected. Further, the very identity of the lot to be sold appears to be erroneous.</u> Guide points a. and d. under Section B above require that a

---

Disclosure Statement address how the debtor intends to execute its Plan. The Disclosure Statement makes confusing references to a sale of a "Lot 10" which will net the Debtor $100,000 cash. At one place, the Disclosure Statement indicates that the Debtor will be taking a security interest and receiving a promissory note (i.e., offer seller financing). (D.S. 12:12-20.) By way of contrast, at another place the Disclosure Statement says that "the Debtor expects to resolve the issue so that a sale can occur with all cash at closing." (D.S. 17:28.). Finally, the Disclosure Statement suggests the possibility that this is the same property that has been the subject of earlier attempts by the Debtor to conduct a sale under §363 of the Bankruptcy Code, but the earlier sale was proposed with respect to a Lot 9, not Lot 10. (D.S. 12:10-16.) The terms of the sale of this lot are material as the proceeds appear to be a primary source of cash to finance Debtor's efforts to implement the Plan. The mechanics of how this is supposed to occur with Lender's lien on the Lot, and with release prices set forth in the deed of trust, are not discussed. Debtor may be maintaining in an adversary proceeding that Lender's lien should be avoided, but what if Debtor loses that dispute? Is the Lender therefore to be prejudiced by receiving no funds notwithstanding that the Lender's collateral is being sold? This leads directly to a remaining point: there is no adequate disclosure of what the funds Debtor proposes retaining from this sale will be used for, or when, other than a general description of "expenses, marketing costs of the Debtor and ongoing costs (insurance and property taxes)." (D.S. 12:19-13:5). Creditors are entitled to a more complete understanding of the use of proceeds from the sale of the subject lot.

    6. <u>The liquidation analysis is inadequate.</u>  Guide point e. under Section B above requires that the Debtor provide a liquidation analysis in the Disclosure Statement. In the present case, the liquidation analysis is confusing and does not meet the requirements under the statute. The Disclosure Statement provides no information about the value of the property at issue. It nevertheless goes on to admit that "the real and personal property assets of the Debtor are encumbered" (by Lender's lien) (D.S. 26:5-7), and that based on the security interests, the assets

have zero value. (D.S. 25:9-26:10.)[2] A liquidation analysis must start with some indication of the value of the assets subject to liquidation.

7.  <u>The Disclosure Statement inadequately explains how voting under the Plan, particularly with respect to Lender, is to occur.</u>  Guide point c. in Section B above requires a description of the Plan which must include a description of the classification of claims for voting purposes. The Disclosure Statement classifies the Lender's claim in its own class and designates it as Class 1. Some parts of the Disclosure Statement provide that Lender's claim is secured. (E.g., D.S. 26:4-8.) Other sections state the claim may be unsecured. (D.S. 11:17- 14:15.) As an unsecured claimant, the Lender would normally be entitled to vote with all other unsecured creditors as part of Class 4. The Disclosure Statement does not adequately describe how voting under the plan is to occur. Moreover, the Debtor appears to be trying to separately classify the Lender's claim, yet then try to treat it as part of the unsecured class 4.

## **CONCLUSION**

The Disclosure Statement does not contain "adequate information" as required by Bankruptcy Code §1125 (b). It does not miss the statutory requirement by a little; rather it misses it by a lot. Creditors have no way of ascertaining the risks posed to them under this Plan. For the reasons set forth above, approval of the Disclosure Statement should be denied.

Respectfully submitted,

Dated: March 18, 2010         SILICON VALLEY LAW GROUP

By: /s/ John W. Easterbrook
    John W. Easterbrook
    Attorneys for Bridge Bank, N.A.

---

[2] The Debtor's liquidation analysis indicates that the value of the property as determined by the Debtor is less than the value of the outstanding secured claims. Accordingly, interest payments on secured obligations must begin upon confirmation of the Debtor's Plan. As the Debtor's Plan does not propose this, it is unconfirmable on its face.