WINFIELD S. PAYNE, III, ESQ., SBN 90142
WINFIELD S. PAYNE & ASSOC.
4308 Lime St.
Riverside, Ca. 92501
(951) 276-9300 (Voice)
(951) 276-9301 (Fax)

WILLIAM L. CONTI, ESQ., SBN 113759
330 Rancheros Dr., Suite 212
San Marcos, Ca. 92069-2978
(760) 891-0801 (Voice)
(760) 891-0803 (Fax)

Attorneys for Debtor VARNER BUSINESS PARK, LLC

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>VARNER BUSINESS PARK, LLC,<br><br>Debtor, | BK. No. 2:10-bk-18488-BB<br><br>CHAPTER 11<br><br>DEBTOR'S MOTION FOR ORDER OF DISMISSAL OF CHAPTER 11 CASE<br><br>HON. SHERI BLUEBOND<br><br>DATE: August 11, 2010<br>TIME: 10:00 a.m.<br>DEPT: 1475 |

**DEBTOR'S MOTION TO DISMISS**

Debtor and debtor-in-possession **VARNER BUSINESS PARK, LLC** ("Debtor") hereby moves the Court for an Order dismissing the above-referenced Chapter 11 case now pending pursuant to 11 USC § 1112. In support of said Motion, Debtor states as follows:

**INTRODUCTION**

The Debtor is a California Limited Liability Company that acquired certain real property located on Watt Court, in the City of Thousand Palms, County of Riverside, State of California (hereinafter the "Real

Property"). As of December, 2005, the Real Property consisted of raw land and was the sole asset of the Debtor. In December 2005, the Debtor entered into certain agreements with secured creditor Bridge Bank National Association ("Bridge Bank") to obtain a construction loan for the development of the Real Property into finished industrial lots to be sold to the public. The Real Property was subsequently developed into 16 separate lots (the "Lots"). All off-site development was completed in 2006. The Debtor was successful in selling 5 Lots between November 2006 and March, 2008 for a gross sales price of $2,040,234.00 and from which the Debtor paid to Bridge Bank the entire proceeds, less sales commissions and costs of sale in the approximate amount of $1,918,000.00 in payment on the Loan.

Beginning in late 2006 the national economy and the local state economy began to recede, and continued to recede in epic proportions through December of 2008. This sudden and unanticipated decline in values prevented the Debtor from realizing sales of the developed Lots on the Real Property in order to pay down and/or satisfy the loan obligations to Bridge Bank.  Between March 2006 and through December 2008 the Debtor worked with Bridge Bank to extend the term of the loans several times through a series of "Change in Terms Agreement", most of which required additional capital infusion which the Debtor did not have. These payments were made by the Debtor through the individuals Watt and Merritt.  In December, 2008 the Debtor continued to negotiate to further extend the term of the loan to allow the real property market to rebound. However, Bridge Bank ultimately refused to provide Debtor with any further extensions of the loan.

On or about March 16, 2009, Bridge Bank commenced a non-judicial foreclosure proceeding on the Real Property. On or about April 8, 2009, Bridge Bank also commenced an action in the Superior Court of California, County of Santa Clara against the individuals Watt and Merritt, entitled <u>Bridge Bank NA v. Richard J. Merritt, et. al.</u>, case # 1-09-CV-139485 (the Superior Court Action"). In the Superior Court Action, Bridge Bank seeks recovery against both Watt and Merritt for the outstanding balance due under the Note pursuant to the purported written guaranties executed by them. The Debtor is not named as a

1 | party to that action.

2 | On or about July 7, 2009, Bridge Bank was proceeding towards a Trustee's Sale on the Real Property.
3 | On July 14, 2009 the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition
4 | under the United States Bankruptcy Code. On January 14, 2010, this Court granted Bridge Bank's
5 | Motion determining this case to be a "single asset case". [See Docket # 45]. On February 16, 2010, and
6 | within 30 days after the Court made the determination that the matter was a "single asset estate", the
7 | Debtor filed its Chapter 11 Plan of Reorganization and Disclosure Statement [See Docket #'s 53 and 54].
8 | Hearing was set on the Disclosure Statement for April 29, 2010. [See Docket # 65]. On March 18, 2010,
9 | Bridge Bank filed its Objection to the Disclosure Statement.

10 | On April 29, 2010, the Court sustained the Objections by Bridge Bank to the Disclosure Statement and
11 | denied approval thereof. The Court set the matter for an OSC Re: Dismissal or Conversion for August 4,
12 | 2010, and authorized that date for hearing on a Disclosure Statement provided it is filed by June 29, 2010.
13 | On May 20, 2010 Bridge Bank filed a Motion for Relief From Automatic Stay pursuant to 11 USC
14 | 362(b). [Docket # 75]. Hearing on the Motion was continued to June 29, 2010. [Docket # 87].

15 | On June 28, 2010, Bridge Bank sold its first priority note and deed of trust to Merritt Williams, LLC, an
16 | entity made up of Richard J. Merritt and an individual named Brian Williams. Debtor thereafter stipulated
17 | to relief requested in Bridge Bank's Motion for Relief from the Automatic Stay. [Docket # 90]. The
18 | Trustee's Sale of the Real Property is scheduled for July 13, 2010 pending the Court's Order granting the
19 | Motion pursuant to the parties' stipulation.

20 | Despite its efforts to propose a workable plan of reorganization the Debtor has resigned itself that it
21 | cannot present a workable plan of reorganization. Once the Real Property is sold at foreclosure sale, there
22 | is no viable business of the Debtor to reorganize and no estate to administer, thus rendering dismissal
23 | appropriate at this time.

## ARGUMENT

I.

## DEBTOR'S MOTION TO DISMISS SHOULD BE GRANTED

"Chapter 11 is for the debtor with a viable business with assets which need to be preserved. *In re Del Monico*, No. 04 B 28235 2005 WL 1129774 (Bankr. N.D. Ill., May 13, 2005). A Court may dismiss a Chapter 11 case at any time by a Motion made by a party in interest. *In re Woodbrook Assoc.*, 19 F.32 312, 317, (7th Cir. 1994). An evidentiary hearing is not required on a motion to dismiss under Bankruptcy Code § 1112. See *Singer Furniture Acquisition Corp v. SSMC Inc., N.V.*, 254 B.R. 46, 53, (M.D. Fla. 2000) (holding that the bankruptcy court was not required to conduct an evidentiary hearing prior to dismissing a Chapter 11 case); See also *C-TC 9th Avenue Partnership v. Norton Co.*, 113 F. 1304 (2nd Cir. 1997). Moreover, where the record is sufficiently well developed to allow the bankruptcy court to draw the necessary inferences to dismiss a Chapter 11 case for cause, the Court has authority to do so. *Id*. And, if all of the relevant issues have been addressed in the course of the case, dismissal for cause under USC § 1112(b) does not require an evidentiary hearing.

Bankruptcy Courts possess the power to dismiss Chapter 11 cases upon a showing of cause by a party in interest, absent unusual circumstances. 11 USC § 1112(b)(1). The determination of "cause" under 11 USC § 1112(b) is subject to judicial discretion under the circumstances of each case". *Albany Partners, Ltd. V. Westbrood*, 749 F.2d 670, 674 (11th Cir. 1984). That discretion was limited however by revisions to the 11 USC § 1112 enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. *In re Gateway Access Solutions, Inc.* 374 B.R. 556, 560 (Bankr. M.D. Penn. 2007). The amendments to § 1112 limit the Court's discretion to refuse to dismiss or convert a Chapter 11 case upon a finding of cause. *Id.*

11 USC § 1112(b) provides a non-exclusive list of factors that demonstrate cause. In this case, the applicable factor is set forth at 11 USC § 1112(b)(4)(A) as follows: "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.". The debtor

concedes there is no hope of proposing a confirmable plan of reorganization and rehabilitating its business. *In re Gateway Solutions, Inc, supra.* The Debtor has no operations, no cash flow and is unable to pay expenses and ongoing costs of maintaining the Real Property without incurring post-petition debt. These facts support a finding of continuing loss to the estate and the absence of a reasonable likelihood of rehabilitation. See *In re Schriock Construction, Inc.*, 167 B.R. 569, 579 (Bankr. D. N.D. 1994).

Moreover, dismissal, rather than conversion, is proper in this case and in the best interests of creditors and the estate because there are no assets available for distribution to unsecured creditors in the event of conversion once the Real Property is foreclosed upon. See *In re Emergystat of Sulligent, Inc.*, WL 597613 at *9 n. 4 (Bankr. E.D. Tenn. Feb. 29, 2008) (dismissal was appropriate where no evidence that there were any assets available for unsecured creditors upon conversion to Chapter 7), *In re 3 RAM Inc.*, 343 B.R. 113 (Bankr. E.D. Penn. 2006) (dismissal was appropriate where the debtor's only asset was fully encumbered and thus there was no estate for a Chapter 7 Trustee to administer). See also: *In re Helmers*, 361 B.R. 190 (Bankr. D. Kan. 2007). In this case, creditors are better off outside of bankruptcy than in Chapter 7 liquidation.

### CONCLUSION

Based upon the facts and law set forth above, the Debtor respectfully submits that this case should be dismissed for cause based upon the continuing loss and diminution of the estate and the absence of a reasonable likelihood of rehabilitation. Therefore, the Debtor respectfully requests that the Court enter an Order dismissing the Debtor's Chapter 11 case and for such other and further relief as the Court may deem just and proper.

Dated: July 6, 2010

WILLIAM L. CONTI, ESQ.
Attorney for Debtor